UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. CR 20-104 (NEB/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MOTION TO DISMISS CHARGES** |
| | ) | **BASED ON VOID FOR VAGUENESS** |
| MATTHEW LEE RUPERT, | ) | **AND OVERBREADTH** |
| | ) | |
| Defendant. | ) | |

PLEASE TAKE NOTICE that Defendant Matthew Lee Rupert, through undersigned counsel, hereby moves the Court for an Order dismissing the Indictment against him on the grounds that the counts charged in the Indictment are all based on statutes that are overly broad and vague in violation of Mr. Rupert's Fifth Amendment Right to Due Process.

"'The prohibition of vagueness in criminal statutes' . . . is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'" Sessions v. Dimaya, 138 S. Ct. 1204, 1212 (2018)(quoting Johnson v. United States, 135 S.Ct. 2551, 2557 (quoting Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926))). The void-for-vagueness doctrine guarantees that ordinary people have "fair notice" of the conduct a statute proscribes. Id. (citing Papachristou v. Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The doctrine also "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges."

Id. (citing Kolender v. Lawson, 461 U.S. 352, 357–358, 103 S.Ct. 1855 (1983)). The

Supreme Court has recently explained,

In our constitutional order, a vague law is no law at all. Only the people's elected
representatives in Congress have the power to write new federal criminal laws. And when
Congress exercises that power, it has to write statutes that give ordinary people fair
warning about what the law demands of them. Vague laws transgress both of those
constitutional requirements. They hand off the legislature's responsibility for defining
criminal behavior to unelected prosecutors and judges, and they leave people with no sure
way to know what consequences will attach to their conduct. When Congress passes a
vague law, the role of courts under our Constitution is not to fashion a new, clearer law to
take its place, but to treat the law as a nullity and invite Congress to try again.

United States v. Davis, 139 S. Ct. 2319, 2323, 204 L. Ed. 2d 757 (2019).

A statute is overbroad on its face if it prohibits constitutionally protected activity,

in addition to activity that may be prohibited without offending constitutional rights.

Grayned v. City of Rockford, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222

(1972). An overbreadth challenge is a facial attack on a statute in which the challenger

must establish that "a substantial number of [a statute's] applications are unconstitutional,

judged in relation to the statute's plainly legitimate sweep." United States v. Stevens, 559

U.S. 460, 473, 130 S.Ct. 1577 (2010) (quoting Wash. State Grange v. Wash. State

Republican Party, 552 U.S. 442, 449 n.6, 128 S.Ct. 1184 (2008)). The rationale for

allowing an overbreadth challenge, even when a statute is constitutional as applied in a

particular circumstance, is that enforcement of an overbroad law chills protected speech,

which "inhibit[s] the free exchange of ideas." United States v. Williams, 553 U.S. 285,

292, 128 S.Ct. 1830 (2008).

For reasons set forth below, that statutes charged in the Indictment in this case are vague and/or overly broad.

**1.      Civil Disorder is Overly Vague and Overly Broad.**

Count 1 of the Indictment charges Mr. Rupert with "Civil Disorder" in violation of 18 U.S.C. § 231(a)(3) which provides as follows:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function--
> Shall be fined under this title or imprisoned not more than five years, or both.

The Supreme Court previously found the following municipal misdemeanor ordinance to be unconstitutionally overbroad: "Sec. 34–11. Assaulting or interfering with policemen. "(a) It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest." City of Houston, Tex. v. Hill, 482 U.S. 451, 455, 107 S. Ct. 2502, 2506 (1987). This ordinance was overbroad because it prohibited free speech. Id, 107 S.Ct. at 2509-10.

The federal felony statute in the instant case can just as easily be applied to free speech, and is at least as broad at the unconstitutionaly Houston ordinance.  A person yelling loudly at a police officer (such as Mr. Rupert allegedly yelling "F -- 12") or

participating in a large demonstration that incidentally interferes with a police officer or firefighter trying to respond to a call could be guilty of the felony of "Civil Disorder." There is no requirement under the Civil Disorder statute that the criminal act be physical rather than verbal. There is no requirement that the act in question even be intended to obstruct rather than unintentional or incidental.

This statute could be used to prosecute for a felony any participant in a large protest or any aggressive or vocal protest in response to the murder of George Floyd, or any other issue of public concern. "The First Amendment recognizes, wisely we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive." Id. 107 S. Ct. at 2515.

In addition to overbreadth, the Civil Disorder provision is also impermissibly vague. an ordinary person - or even a legally erudite person - would be unable to determine what sort of act would rise to the level of interference with a law enforcement officer performing official duties. The lack of any explicit requirement of intent further places an impossible amount of uncertainty about what sort of act in the course of a "civil disorder" could rise to the level a felony. The determination of what would constitute a "civil disorder" that could invoke the statute is also vague and confusing and overbroad. It is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to

4

the property or person of any other individual." 18 U.S.C. § 232(1). A person exercising their First Amendment rights to participate in a demonstration would be unable to reasonably determine police and the government would interpret a noisy and angry but still non-violent protest to be "violent" or causing an immediate danger. The statute again can be used to chill free speech, especially in times such of mass unrest.

The statute further requires that the violative act "in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." 18 U.S.C. § 232(c). Again, a reasonable or ordinary person cannot reasonably be expected when participating in a demonstration to determine what sort of act might adversely affect movement of an article of commerce or performance of a "federally protected function."[1]

Although the 8th Circuit previously upheld 18 U.S.C. § 231(a)(3) against a constitutional challenge as vague and overly broad, this decision from almost fifty years ago is clearly no longer good law. United States v. Mechanic, 484 F.2d 849 (1971). This decision predates all of the above-cited Supreme Court decisions on vagueness and overbreadth. Mechanic held that the defendant "may not challenge it [the statue] as vague or overly broad if their own conduct may be constitutionally prohibited, Id. at 853,

---

[1] 18 U.S.C. § 232(3) defines federally protected function as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails." Again, it strains credibility to expect any person present at a demonstration, or what the government might deem to be a "civil disorder" to figure out what this means.

proposition that is clearly not correct under subsequent case law that permits facial

challenges to statutes. <u>Mechanic</u> is further distinguishable because the acts in question

were clearly direct at a federally protected function - an ROTC building, and the

defendant threw cherry bombs at police and firefighters trying to extinguish an ROTC

fire. <u>Id</u>. at 854. There are no such specific allegations in the instant case that there was

any federally protected function or that any alleged violent acts were directed specifically

at police or firefighters. It is therefore appropriate and not contradictory to precedent to

rule Section 231(a)(3) unconstitutional both on its fact and as applied.

> **2.      Riot is Overly Vague and Overly Broad.**

Count 2 of the Indictment charges Mr. Rupert with "Civil Disorder" in violation of

18 U.S.C. § 2101(a) which provides as follows:

> (a) Whoever travels in interstate or foreign commerce or uses any facility of
> interstate or foreign commerce, including, but not limited to, the mail,
> telegraph, telephone, radio, or television, with intent--
>> (1) to incite a riot; or
>> (2) to organize, promote, encourage, participate in, or carry on a riot;
>> or
>> (3) to commit any act of violence in furtherance of a riot; or
>> (4) to aid or abet any person in inciting or participating in or carrying
>> on a riot or committing any act of violence in furtherance of a riot;
> and who either during the course of any such travel or use or thereafter
> performs or attempts to perform any other overt act for any purpose
> specified in subparagraph (A), (B), (C), or (D) of this paragraph--
> Shall be fined under this title, or imprisoned not more than five years, or
> both.

"Riot" and "to incite a riot" are defined as follows:

(a) As used in this chapter, the term "riot" means a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

(b) As used in this chapter, the term "to incite a riot", or "to organize, promote, encourage, participate in, or carry on a riot", includes, but is not limited to, urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

18 U.S.C.A. § 2102.

This statutory framework encompasses vague provisions that lack standards for determining what would constitute criminal conduct. "A threat or threats of the commission" of such acts of violence by "one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat" § 2102(a)(2), is not adequately defined and there is no existing legal standard to determine what conduct is covered. The terms "incite a riot" and "organize, promote, encourage, participate in, or carry on a riot" are highly vague and subjective, and cannot be defined based on any of the statutory language or applicable case law.

7

Does a protest with speeches about "bringing the system down" or "eliminating the police" constitute a threat of acts of violence, and could a large group be deemed to be able to carry out such "threats"?  A person participating in a protest is unreasonably forced to assess the chances that particular expressive conduct could lead to violence, and in the process chill First Amendment expression. It is highly plausible that a federal administration with authoritarian leanings and an intolerance of dissent would interpret such conduct to constitute riot. Such an interpretation should run afoul of the First Amendment. Such vague language is an invitation to arbitrary and unfair enforcement of the law - by precisely the sort of administration that is currently in power. It is a danger for a free society for the government to have such a vague statute in its criminal arsenal.

The statute is also overbroad because, as described just above, it restricts a substantial amount of First Amendment activity. It poses a clear danger to the right of freedom of assembly and free speech. Persons seeking to exercise these fundamental rights can easily find themselves subject to federal felony riot charges because other participants in an assembly engage in violent acts, or even just make constitutionally protected political statements that are interpreted under this overly broad statute to be threats of violence.

The charge of Riot must be dismissed as overly vague and overbroad on its face and as applied.

## 2.      The Arson Statute Provision is Overly Vague and Overbroad.

Count 3 of the Indictment charges Mr. Rupert with "Arson" in violation of 18

U.S.C. § 844(i) which provides as follows:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

This statutory provision is overly vague because "maliciously" and "damage" are not

meaningfully defined or quantified.  As inherently acknowledged in the statue, not all

fires are malicious. There is no guidance under the statute to determine the difference

between a malicious and non-malicious fire. In the context of a civil uprising, a fire may

be set for its visual affect, and intended as a political statement. It may or may not be

illegal, but how can one determine what the threshold would be to make it malicious?

Would de minimis or unintentional damage make it malicious? The statute does not

permit any reasonable determination of the threshold for this critical element of the

offense.

The lack of explanation of "damage" also makes that statute impossible to figure

out. The statute carries a five year mandatory minimum prison sentence. If some sets a

small or controlled fire and it leaves burn marks, does that qualify as damage or an

attempt to damage property? Or is it necessary to substantially interfere with use or

function of the property? The vagueness of this term encourages arbitrary enforcement of

the statute, prosecuting persons in situations where a federal charge would not have been reasonably anticipated but perhaps pursued as in this case to advance a larger political agenda of persecuting protesters for a cause that the president disapproves of.

The statute is also overbroad because it covers conduct that is constitutionally protected. The burning of one's own property could be one's prerogative. The burning of a flag could violate the statute because it is personal property, but is protected by the First Amendment. See United States v. Eichman, 496 U.S. 310, 110 S. Ct. 2404 (1990); Texas v. Johnson, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989).

The statute is overly broad and vague on its face and as applied, and should be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Rupert requests that all of the charges in the Indictment against him be dismissed.

Dated:  July 5, 2020                    LAW OFFICE OF JORDAN S. KUSHNER

                                        By  s/Jordan S. Kushner
                                            Jordan S. Kushner, ID 219307
                                            Attorney for Defendant
                                            431 South 7th Street, Suite 2446
                                            Minneapolis, Minnesota  55415
                                            (612) 288-0545