UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. CR 20-104 (NEB/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **DEFENDANT'S POST-HEARING** |
| ) | **MEMORANDUM IN SUPPORT OF** |
| MATTHEW LEE RUPERT, ) | **DISMISSAL AND SUPPRESSION** |
| ) | |
| Defendant. ) | |

Defendant Matthew Lee Rupert, through his undersigned counsel, submits this Memorandum in support of his motions to suppress evidence obtained as a result of his arrest and search of his vehicle, his statement to FBI agents, and from search warrants of his home; and his motions to dismiss the Indictment because the statutes charged are unconstitutionally overbroad and vague.[1]

**I.      SUPPRESSION MOTIONS**

**A.      Suppression of Evidence from Arrest in Chicago and Seizure of Vehicle.**

*1. Relevant Facts*

The only witness called to testify was FBI special agent F.M. Stephens. Stephens was not in Chicago and did not observe Mr. Rupert's arrest or the search of his vehicle. (Hearing Tr. 77, 85). He had no knowledge of any of Mr. Rupert's activities in Chicago prior to his arrest. (Tr. 78). Stephens had no communications with the Chicago police

---

[1] The defense is not providing further briefing on its motion to dismiss the indictment for failure to state an offense but rests the argument in its original motion. (Doc. 33).

officers who arrested Mr. Rupert. (Hearing Tr. 77). He provided a Chicago police report that he obtained through agents in Chicago. (Hearing Tr. 56-58). Stephens could not identify which specific agent provided him with the police report, or how that agent obtained the report. (Tr. 58-59). The police report claimed that Mr. Rupert was arrested for a curfew violation, on the grounds that the mayor of Chicago had issued a curfew order from 9 pm - 6 am. (Tr. 62, 78-79, 97-98; Hearing Exhibit E). There was no evidence presented that there was any basis prior to Mr. Rupert's arrest that he had engaged in looting, damage to property or any criminal activity in Chicago. (Tr. 78-79. 98).

     Agent Stephens was unable to cite any state or local law that Mr. Rupert violated in connection with the curfew. (Tr. 79-82). Stephens has not seen the legal authority that makes a curfew violation a crime. (Tr. 82). He did not see any specific order regarding a curfew that was referenced in the police report or the statute or law that authorized such an order. (Tr. 83-84). The police report does not contain a citation to any specific law that Mr. Rupert allegedly violated. (Hearing Ex. E). Agent Stephens agreed that a law enforcement agent is required to know what law is violated in order to make an arrest. (Tr. 81). The government did not produce the purported curfew order as evidence and has not cited any legal authority for such an order or that would make violation of such an order a criminal offense.

According to the police report, Mr. Rupert owned the vehicle that police seized and searched in Chicago in connection with his arrest. (Tr. 60-61, 84; Hearing Exhibit E). Police conducted a "custodial search" of the vehicle after arresting Mr. Rupert and seized and inventoried multiple items of evidence. (Hearing Ex. E).

### 2. *Legal Analysis.*

Any evidence seized from Mr. Rupert and his vehicle and any identification of Mr. Rupert in Chicago resulting from his arrest must be suppressed because the police officers lacked probable cause to believe he committed any criminal offense. The police therefore violated Mr. Rupert's Fourth Amendment rights by arresting and searching him, and by seizing and searching his vehicle without a warrant and without probable cause to believe that Mr. Rupert committed a crime or that the vehicle contained evidence of criminal activitiy.

The burden of proof is on the government to show existence of probable cause to support a warrantless search or seizure. See United States v. Andrews, 454 F.3d 919, 922 (8th Cir. 2006) (referring to the possibility that in the suppression hearing below the Government might have "failed in its burden to prove that Deputy Brown had probable cause to stop Mr. Andrews's car"); Carter v. United States, 729 F.2d 935, 940 (8th Cir. 1984) ("As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, but on the government to justify a warrantless search."); Recznik v. City of Lorain, 393 U.S. 166, 169–70 (1968) (holding that a "motion to suppress should have

been granted" because the prosecutor "did not meet the burden of showing probable cause"). The government has utterly failed to meet its burden. It failed to call any witnesses who participated in, observed or otherwise had any personal knowledge of the arrest of Mr. Rupert or search of his vehicle. The Court is left to rely on vague commentary by an FBI agent who was not involved, based on the vague police report that the Court admitted into evidence over the defense objection based on lack of foundation. Neither the police report nor the government provides a citation any specific federal, state or local law that Mr. Rupert allegedly violated to justify the arrest.

      The Court cannot find probably cause for Mr. Rupert's arrest without information about any specific criminal law that was allegedly violated. "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." Beck v. State of Ohio, 379 U.S. 89, 96, 85 S. Ct. 223, 228, 13 L. Ed. 2d 142 (1964)(citing Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)).  It is unknown what offense police believe that Mr. Rupert committed.

      The police report states that the mayor of Chicago had issued a curfew order that prohibited Mr. Rupert from being outside in Chicago after 9 pm. The purported curfew order has not been produced by the government. Undersigned counsel cannot find such an order posted anywhere on the Worldwide Web despite diligent search efforts. It is

unknown what authority was relied upon by the mayor of Chicago if she issued such an order. It is unknown whether the authority relied on would have rendered violation of the order an arrestable offense. In the absence of the purported order or authority for the order, it is impossible to evaluate whether the order was actually authorized by any law. It is likewise impossible to evaluate whether the order to authorizing authority whereby a mayor could ad hoc declare a criminal offense were constitutional.[2]

It is not possible to determine the arresting officers' knowledge of the order referenced in their report since the government failed to call as a witness any officer involved in the arrest.  Whether or not the officers had any good faith subjective belief in the existence or validity of an order authorizing their arrest of Mr. Rupert would not be helpful in determining whether their was actually probable cause to believe he committed offense because probably cause is evaluated based on an objective standard. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged

---

[2] In the event that the Government subsequently provides a curfew order or citation to authority for the order, the defense would request an opportunity to respond.

against an objective standard." Terry v. Ohio, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968). "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 594, 160 L. Ed. 2d 537 (2004) (quoting Horton v. California, 496 U.S. 128, 138, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).  Even if the government had produced meaningful evidence that the officers had a genuine belief that there was a government order authorizing Mr. Rupert's arrest, it would have still failed to meet its burden of demonstrating probable cause to justify the arrest in the absence of any specific and verifiable legal authority to justify arrest.

      The Court should not further speculate on the existence of any legal authority for Mr. Rupert's arrest since no such authority was cited by the arresting officers and no authority was provided by the government at the hearing. However, even if the Court were to assume arguendo that a curfew order existed, there is no basis to conclude based on the record that such an order would provide a legally valid basis for Mr. Rupert's arrest. As FBI agent Stephens acknowledged, a law enforcement officer needs to be able to cite a federal, state or local law to support an arrest. An order issued by an government executive officer is not a law. A law, including especially a criminal law, must be passed by a legislative body.

A pertinent line of authority is federal case law setting forth the limits of presidential executive orders. "Another strand of our separation-of-powers jurisprudence, the delegation doctrine, has developed to prevent Congress from forsaking its duties." Loving v. United States, 517 U.S. 748, 758, 116 S. Ct. 1737, 1743, 135 L. Ed. 2d 36 (1996).  "It does not suffice to say that Congress announced its will to delegate certain authority. Congress as a general rule must also 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" Id. (citing J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928); Touby v. United States, 500 U.S. 160, 165, 111 S.Ct. 1752, 1755–1756 (1991)). "The intelligible-principle rule seeks to enforce the understanding that Congress may not delegate the power to make laws and so may delegate no more than the authority to make policies and rules that implement its statutes." Id. (citing Marshall Field & Co. v. Clark, 143 U.S. 649, 693–694, 12 S.Ct. 495, 504–505 (1892)). 'The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. United States v. Grimaud, 220 U.S. 506, 520, 31 S. Ct. 480, 484, 55 L. Ed. 563 (1911)(quoting Marshall Field & Co. v. Clark, 143 U. S. 694, 36 L. ed. 310, 12 Sup. Ct. Rep. 495 (1892)). In order for a legislative body to delegate authority to prescribe criminal punishments, at least as to Congress, it must "makes the violation of regulations a criminal offense and fixes the punishment, and the

regulations 'confin[e] themselves within the field covered by the statute.' " Id. (quoting United States v. Grimaud, 220 U.S. 506, 518, 31 S.Ct. 480, 483, 55 L.Ed. 563 (1911) and citing Touby v. United States, 500 U.S. 160, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991)).

If there was a curfew order that authorized Mr. Rupert's arrest, in order for it to be constitutionally valid in accordance with separation of powers requirements, a legislative body would at least have needed to delegate authority to the mayor to issue such a curfew order, make violation of the order a criminal offense, and the order would have has to confine itself within the parameters authorized by the legislation.

In addition to the possible that the curfew order violated constitutional separation of powers requirements, such a blanket restriction preventing anyone from being outside at night likely violated First Amendment protections for free speech See e.g. Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992)(Any regulation on the use of a public forum must: (1) be "justified without reference to the content of the regulated speech;" (2) be "narrowly tailored to serve a significant governmental interest;" (3) "leave open ample alternative channels for communication of the information;" and (4) "not delegate overly broad licensing discretion to a government official."). There is also a fundamental right of freedom of movement. Papachristou v. City of Jacksonville, 405 U.S. 156, 163, 92 S. Ct. 839, 844, 31 L. Ed. 2d 110 (1972) "In all the states, from the beginning down to the adoption of the Articles of Confederation, the citizens thereof possessed the fundamental right, inherent

in citizens of all free governments, peacefully to dwell within the limits of their respective states, to move at will from place to place therein, and to have free ingress thereto and egress therefrom, with a consequent authority in the states to forbid and punish violations of this fundamental right." United States v. Wheeler, 254 U.S. 281, 293, 41 S. Ct. 133, 134, 65 L. Ed. 270 (1920).

Again, the validity of any curfew order cannot be evaluated because the government has not presented evidence of the order or underlying authority. The government has thereby failed to meet its burden of proof to establish probable cause that Mr. Rupert committed any criminal offense.

**B.**     **Suppression of Statement.**

   *1.  Relevant Facts*

As soon as FBI agents entered Mr. Rupert's holding cell and introduced themselves, he requested to speak with an attorney. (Tr. 73; Hearing Exhibit G). An agent repeated Mr. Rupert's statement, which agent Stephens who was not present at the interview claimed was a "clarifying question." (Tr. 73). The agents who conducted the interview did not testify. Agent Stephens was not even able to identify the agents who conducted the interview. (Tr. 85).

The government introduced into evidence a consent from that Mr. Rupert allegedly signed to waive his Miranda rights. (Hearing Exhibit H). The video suggests agents handed Mr. Rupert a form after he had requested an attorney. (Hearing Exhibit G). The

government's only witness, agent Stephens, did not personally observe Mr. Rupert read the form or sign it. (Tr. 85-86).

### 2. *Legal Analysis.*

Mr. Rupert's statement to FBI agents must be suppressed as a violation of his Fifth and Sixth Amendment rights because it was the product of interrogation after he had clearly invoked his right to an attorney.

The government has the burden to prove that the interrogation did not violate Mr. Rupert's rights. "When the proponent seeks to suppress evidence for violation of his or her Fifth Amendment rights to silence and counsel, as recognized by the Supreme Court in Miranda, the state bears the burden of showing by a preponderance of the evidence that the defendant waived his or her rights." United States v. Kouayara, 189 F. Supp. 3d 835, 840 (D. Minn. 2016)(citing Berghuis v. Thompkins, 560 U.S. 370, 384, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010); J.D.B. v. North Carolina, 564 U.S. 261, 269–70, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011) ("[T]he burden is on the Government to show, as a 'prerequisit[e]' to the statement's admissibility as evidence in the Government's case in chief, that the defendant 'voluntarily, knowingly, and intelligently' waived his [Miranda] rights")). The government has produced limited evidence, consisting of a video recording of the interrogation and the commentary of an FBI agent who was not involved in the interrogation.

The issue in this case is simple. Mr. Rupert explicitly stated in response to the visit by FBI agents that he wanted an attorney. FBI agents ignored that request and continued with an interrogation. "Miranda itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused, 'the interrogation must cease until an attorney is present.'" Edwards v. Arizona, 451 U.S. 477, 485, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981)(citing Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 1627 (1966)). "We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981).

After Mr. Rupert explicitly and unequivocally invoked his right to counsel, the FBI agents were required to cease any interrogation until counsel was made available to him. They had not basis to repeat a question that Mr. Rupert had already answered, present him with a form and effectively persuade him to abandon his rights that he had already asserted. Any statements that Mr. Rupert made during the interrogation must be suppressed.

**3.    Suppression of Evidence from Search of Home.**

*1.  Relevant Facts.*

Agent Stephens had no personal knowledge of the presentation to the judge of the applications for warrants to search Mr. Rupert's residence in Galesburg, Illinois. (Tr. 93-94). He does not know if the application was presented just by telephone or also through video. (Tr. 94). Agent Stephens did not observe whether an oath was taken by the agent submitting the applications. (Tr. 94). He doe not know if there was any discussion between the judge and agent in addition to presentation of the application. (Tr. 95).

Agent Stephens did not observe any of the property seized from Mr. Rupert's home and he did not know how the posters seized are related to the alleged offenses. (Tr. 95-96).

*2.  Legal Analysis.*

The government has failed to demonstrated the warrants for Mr. Rupert's home were obtained in accordance with the requirements of the rules. The property seized also exceeded the scope of the warrant.

Fed. R. Crim. P. 41(d)(2)(C) requires that a record be made of any testimony taken in support of a warrant. The FBI agent who testified did not participate in procuring the warrant and has no knowledge of whether there was any testimony taken in support of the search warrants. There was also no testimony to establish that the telephonic means of communication for obtaining the warrant, as indicated in the warrant, were "reliable"

within the meaning of Rule 41(d)(3). The government has thereby failed to demonstrate the validity of the process of obtaining the warrants.

The FBI agent was unable to explain the connection between posters seized from Mr. Rupert's home and the offense, or how they were covered by the warrant. (See Hearing Exhibit C, Attachment B). That evidence must therefore be suppressed as beyond the scope of the warrant.

## II.   MOTIONS TO DISMISS BASED ON UNCONSTITUTIONALITY OF STATUTES.

The Court requested at the hearing that counsel 1) identify the type of constitutional challenge to the charge statutes, 2) state whether the challenge is facial, as applied, or both, and 3) set forth factual and legal bases in support of challenge. As stated in Defendant's original motion in support of dismissal on constitutional grounds (Doc. 34 - hereby incorporated by reference), the defense challenge all three charged statutes as unconstitutionally overbroad and vague. The defense further brings facial challenges to the statutes and further challenges them as applied to this case. However, the defense does acknowledge that it would be premature for the Court to rule on an as-applied challenge because the factual basis for the charges has not yet been sufficiently presented in the record.

As to the factual and legal substance for Mr. Rupert's facial challenges to the statutes, the defense does not have substantial additions to the arguments presented in the original motion. The government did not make any efforts to refute Mr. Rupert's

13

arguments except to cite cases where the constitutionality of the civil disorder and riot statutes were previously upheld. The government did not in any way respond to Mr. Rupert's facial challenge to the arson statute.

With respect to United States v. Mechanic, 484 F.2d 849 (1971), which rejected a facial challenge to the civil disorder statute, the original defense motion explained that the decision made statements of law that are clearly invalid in light of subsequent Supreme Court precedent.  Mechanic held that the defendant "may not challenge it [the statue] as vague or overly broad if their own conduct may be constitutionally prohibited, Id. at 853, which is clearly contrary to subsequent Supreme Court cases cited in Mr. Rupert's motion which entertain facial challenges to statutes without regard to the conduct alleged in the particular case. As recently explained in an appellate decision, "This so-called overbreadth doctrine 'allows a party to challenge a law facially under the First Amendment by 'describing a substantial number of instances of arguable overbreadth of the contested law,' even if the law is constitutional as applied to [himself].'" United States v. Miselis, 972 F.3d 518, 530 (4th Cir. 2020)(citing Preston v. Leake, 660 F.3d 726, 738-39 (4th Cir. 2011)(quoting Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190, 170 L. Ed. 2d 151 (2008))).

Mechanic further more did not deal with any of the arguments presented in Mr. Rupert's motion. It rejected the challenge based on the defendant's own conduct directed at a federal building, an allegation not present in the instant case.

The government's response to Mr. Rupert's challenge to the riot statute is to cite two cases from other jurisdictions that upheld the statute's constitutionality. United States v. Dellinger, 472 F.2d 340 (7th Cir. 1972); United States v. Daley, 378 F. Supp. 3d 539 (W.D. Va. 2019), affirmed, United States v. Miselis, 972 F.3d 518 (2020). Miselis agreed that "the Anti-Riot Act sweeps up a substantial amount of speech that retains the status of protected advocacy under Brandenburg insofar as it encompasses speech tending to 'encourage' or 'promote' a riot under § 2101(a)(2), as well as speech 'urging' others to riot or 'involving' mere advocacy of violence under § 2102(b)." 972 F.3d at 530. It engaged in extensive analysis as to how the language of the statute criminalized conduct protected by the First Amendment. Id. at 531-541. However, this 4th Circuit decision held that statute was consistent with the First Amendment in other respects, and therefore severed the specific areas of overbreadth. Id. It struck the words, "promote, encourage" in 18 U.S.C. § 2102(a)(2), and the words "urging and "not involving advocacy of any acts or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts" in § 2102(b). Id at 542-43.

The defense submits that the severing of certain words and phrases from the statute is insufficient to obviate its First Amendment deficiencies. Under the language remaining in Miselis, "organizing" which also is inherently speech and falls within the First Amendment freedoms of assembly and to petition government, is still sufficient to commit riot. "Violence" is also not defined under the statutory scheme which continues

15

to render the statute overly vague as it is not feasible to be able distinguish where speech ends and violence begins in the context of an angry political protest.

The statutes charged in this case should all be declared unconstitutional.

## CONCLUSION

For the foregoing reasons, Mr. Rupert requests that all of the charges in the Indictment against him be dismissed, or that the evidence against him be suppressed.

Dated:  November 4, 2020	LAW OFFICE OF JORDAN S. KUSHNER

By  s/Jordan S. Kushner
Jordan S. Kushner, ID 219307
Attorney for Defendant
431 South 7th Street, Suite 2446
Minneapolis, Minnesota  55415
(612) 288-0545