# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 20-cr-104 (NEB/TNL) |
| Plaintiff, | **\*FILED UNDER SEAL\***[1] |
| v. | **ORDER** |
| Matthew Lee Rupert, | |
| Defendant. | |

---

Angela M. Munoz and Jordan L. Sing, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Jordan S. Kushner, Law Office of Jordan S. Kushner, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415 (for Defendant).

---

This matter is before the Court on Defendant Matthew Lee Rupert's Motion for Release from Custody, ECF No. 62.[2]  The Government opposes the motion.  For the reasons set forth below, Defendant's motion is denied.

---

[1] Out of an abundance of caution, this Order is being filed under seal.  *See infra* n.4.  In the Court's view, this entire Order should be unsealed.  Therefore, within 14 days from the date of this Order, the parties shall submit a proposed joint redacted version of the Order to the Court.  Should the Court not receive a proposed joint redacted version of the Order at that time, the Court will unseal the Order in its entirety.

[2] The Court finds that the matter is suitable for determination without a hearing and is submitted on the papers.  *See* ECF No. 64 ("The Court will endeavor to rule on this motion without a hearing; therefore, the parties should undertake to provide the Court with the information necessary to its determination in their written submissions.").

1

## I. BACKGROUND

### A. Charges

On June 10, 2020, Defendant was indicted on one count of civil disorder in violation of 18 U.S.C. § 231(a)(3); one count of riot in violation of 18 U.S.C. § 2101(a); and one count of arson in violation of 18 U.S.C. §§ 2 and 844(i). *See generally* ECF No. 12. These charges stem from Defendant's alleged travel from Illinois to Minnesota and his activities in Minnesota on or about May 29, 2020, following the death of George Floyd. *See generally* ECF No. 12.

### B. Detention Hearing & Order of Detention

Defendant's arson charge created a rebuttal presumption in favor of detention. 18 U.S.C. §§ 3142(e)(3)(C) (rebuttal presumption for offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed), 2332b(g)(5)(B) (listing violation of "section . . . 844(i) (relating to arson and bombing of property used in interstate commerce)"); *see also United States v. Renford*, No. 20-CR-80-A, 2020 WL 4333337, at *4 (W.D. N.Y. July 28, 2020) (charge of arson in violation of 18 U.S.C. § 844(i) among specified group of statutes giving rise to rebuttal presumption), *aff'd*, No. 20-2628, 2020 WL 6552073 (2d Cir. Sept. 17, 2020).

Defendant contested detention and a hearing was held before a magistrate judge. *See generally* Order of Det., ECF No. 18. At the hearing, Defendant argued he should be released to his mother's home in Illinois, where he resided at the time of his arrest. Order of Det. at 4. The magistrate judge received 11 exhibits from the Government and 7 exhibits from Defendant as well as 4 "declarations from [Defendant's] family and friends." Order

of Det. at 2; *see* ECF Nos. 8-11.  The magistrate judge also received a Pretrial Services

Report,[3] which recommended detention.  Order of Det. at 2.  After considering these

materials, "the arguments of counsel, the serious nature of the current charges," the

rebuttable presumption, and "the factors listed in 18 U.S.C. § 3142(g)," the magistrate

judge concluded that "[a]lthough [Defendant] successfully rebutted the presumption of

detention with respect to risk of flight," the Government had met its burden to show that

there was no condition or combination of conditions of release that would reasonably

assure Defendant's appearance at future court proceedings and the safety of the

community, and granted the Government's motion for detention.  Order for Det. at 2.

     As for the seriousness of the charges, the magistrate judge stated:

> It is alleged that on or about May 29, 2020, [Defendant] traveled from Illinois to Minnesota with intent to, among other things, promote, encourage, and participate in a riot.  While in the District of Minnesota, [Defendant] is alleged to have knowingly obstructed, impeded, and interfered with law enforcement incident to and during the commission of a civil disorder.  [Defendant] is alleged to have possessed and encouraged others to throw his explosive devices at law enforcement offers responding to public protests.  Finally, [Defendant] is charged with aiding and abetting an arson at the Sprint Store located at 3009 Nicollet Avenue in Minneapolis, Minnesota.

Order of Det. at 3.  The magistrate judge additionally stated that "[t]he alleged arson

constitutes a crime of violence" and "carries a [5-]year mandatory minimum sentence with

a 20[-]year maximum sentence."  Order of Det. at 3.

---

[3] This report from Pretrial Services was filed under seal but made available to counsel.

As for Defendant's history and characteristics, the magistrate judge noted that the

Pretrial Services Report

> indicates that [Defendant] has numerous prior misdemeanor
> and felony criminal convictions, including several convictions
> for resisting arrest and threatening public officials.
> [Defendant] also has a prior felony conviction for unlawful
> possession of a weapon by a felon, multiple convictions for
> domestic battery and physical contact, multiple felony-level
> theft convictions, and multiple possession of narcotics
> convictions.

Order of Det. at 3-4.  The magistrate judge pointed out that a federal search warrant was

executed on Defendant's residence in Illinois —the very residence Defendant sought to

return to then and presumably seeks to return to now[4]—approximately two weeks earlier,

which resulted in the seizure of "numerous weapons, apparent drug paraphernalia, and

explosive devices."  Order of Det. at 4.  The magistrate judge additionally noted that the

Pretrial Services Report "indicates that [Defendant] previously failed to appear in court in

the county where he lives on five occasions and failed to appear in court in a neighboring

county on one occasion," and Defendant does not have any connection to Minnesota.

Order of Det. at 4.

Ultimately, the magistrate judge found that, while Defendant had "rebutted the

presumption with respect to his nonappearance due to his family connections and the

reported need to assist in the care of his mother," the Government "established by a

---

[4] As the Government points out, Defendant "does not specify precisely where he intends to reside upon his requested
release from Sherburne County Jail."  Gov't's Opp'n at 2 n.1, ECF No. 66.  Defendant asks that he be "permitted to
remain on house arrest" and "live with his family while these court proceedings continue."  Mot. for Release at 1, 3;
*see also* Reply at 1 (requesting to "be released to home confinement"), ECF No. 67.
    The Court additionally notes that Defendant filed his reply under seal.  Given the inclusion of certain
medical information, the Court can understand why Defendant may have wanted to file the reply under seal.  The
Court has thus filed this Order under seal out of an abundance of caution.

preponderance of the evidence that [Defendant] remains a flight risk due to the seriousness

of the charges, the nature of the consequences . . . [he] faces if convicted, including a five[-

]year mandatory minimum term of imprisonment for the arson charge, and his previous

failures to appear in local criminal matters in Illinois."  Order of Det. at 4.  The magistrate

judge also found that Defendant had "not rebut[ted] the presumption with respect to the

safety of the community."  Order of Det. at 4.

> Based on the Pretrial Services [Report], the arguments of
> counsel, the serious nature of the pending charges, the weight
> of the evidence, [Defendant's] criminal history involving
> violence, failure to appear, and non-compliance with court-
> ordered conditions of supervision, and considering the factors
> outlined in 18 U.S.C. § 3142(g), [the magistrate judge
> concluded that] no condition or combination of conditions
> w[ould] reasonably assure [Defendant's] appearance as
> required for future proceedings, or the safety of the community
> should he be released pending trial.

Order of Det. at 5.

### C. Motion for Release

Defendant is currently confined at the Sherburne County Jail (hereinafter, "the Jail")

and moves for release on grounds that the Jail's response to the unprecedented COVID-19

pandemic has resulted in conditions of confinement that fail to comply with due process

and violate his basic human rights.  Defendant states that "[n]umerous inmates" he has

been housed with "have become sick with COVID-19" and he "has been repeatedly moved

in response to [the] sickness of other inmates."  Mot. for Release at 1.  Defendant states

that "[h]e has been continuously on lockdown for at least the past month," resulting in him

being "confined to his cell at least 23 hours per day."  Mot. for Release at 1.  By way of

example, Defendant states "[t]here have been two stretches of 4-5 days when [he] has been locked up continuously in his cell and has not even been able to shower." Mot. for Release at 1.

In his reply, Defendant additionally asserts that the Jail is unable "to meet [his] basi[c] needs," Reply at 2, attaching five of his grievances and the responses from Jail staff. Four of the grievances are related to programming opportunities at the Jail. These four grievances are all dated November 1, 2020, and were all responded to the following day. Defendant inquired as to the availability of drug-abuse, religious, educational, and exercise programming. Jail staff responded that there was currently no programming going on because instructors and volunteers were not presently permitted to enter the Jail due to COVID-19 concerns. Jail staff additionally informed Defendant that there seemed to be "small group bible study" being arranged by inmates in the housing units and that Defendant could request "a workout plan to be done in [his] room or walk[] around the housing unit to get exercise." ECF No. 67-1 at 4, 10. The fifth grievance related to a request for mental-health medication, which Defendant claimed he was being denied. Jail staff "recommend[ed Defendant] see[] the medical provider to discuss [his] concerns." ECF No. 67-1 at 6.

## II. ANALYSIS

Section 3142 governs the release or detention of a defendant pending trial. *See generally* 18 U.S.C. § 3142. Subsection (f) permits a detention hearing to be reopened when there is information that was not known at the time of the hearing "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the

6

appearance of [the person detained] . . . and the safety of any other person and the community." *Id.* § 3142(f). Subsection (i) allows for the detained person's "temporary release" upon determining "such release to be necessary for preparation of the person's defense or for another compelling reason." *Id.* § 3142(i). The Court addresses each in turn.

### A. Section 3142(f)

As stated above, § 3142(f) permits a detention hearing to be reopened if there is information that was not known at the time of the hearing "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of . . . [the detained] person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(f). Its function "is to allow parties to present new information that increases the likelihood a defendant would appear in court or decrease[s] the potential danger a defendant poses to an individual or the community as a whole." *United States v. White*, No. 19-cr-204 (ECT/BRT), slip op. at 3 (D. Minn. Apr. 1, 2020).

This Court, like so many others, "understands the gravity of the COVID-19 pandemic and is mindful of the unprecedented circumstances it presents for both society at large and for the prison system." *United States v. Morris*, No. 17-cr-107(01) (DWF/TNL), 2020 WL 1471683, at *3 (D. Minn. Mar. 26, 2020); *see also, e.g., United States v. Clark*, 448 F. Supp. 3d 1152, 1156 (D. Kan. 2020) ("The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents."). But, concerns and arguments based on COVID-19 do not address § 3142(f)'s central question, namely, whether *Defendant* poses a flight risk or danger to the community. *See*

18 U.S.C. § 3142(f), (g)(4); *United States v. Lee*, 451 F. Supp. 3d 1, 7 (D. D.C. 2020) ("[T]he statute requires the Court to evaluate '*the danger*' that 'would be posed *by the person's release*.'" (quoting 18 U.S.C. § 3142(g)(4)). "While the Court is sympathetic to [Defendant's] concerns about the possibility of contracting COVID-19, such concerns have no bearing, much less 'material bearing,' under § 3142(f), on the question of Defendant's risk of flight and the safety of the community, under these facts." *United States v. Graham*, 452 F. Supp. 3d 871, 877 (D. Minn. 2020), *aff'd*, No. 20-1903 (8th Cir. June 4, 2020).

Therefore, to the extent Defendant argues that the COVID-19 pandemic constitutes a changed circumstance compelling his release, he has offered no reason why the pandemic would reduce his risk of nonappearance or the risk that he poses to the community. *See Clark*, 448 F. Supp. 3d at 1156 ("The risk of harm *to the defendant* does not usually bear on [§ 3142(f)'s] analysis."); *see also United States v. Hall*, No. 19-cr-103(02) (MJD/ECW), 2020 WL 2992400, at *3 (D. Minn. June 4, 2020) (defendant "failed to demonstrate how the COVID-19 pandemic factors into whether he poses a flight risk or a danger to the community").

### B.  Section 3142(i)

The thrust of Defendant's argument is that the Jail's response to COVID-19— including lockdown conditions and the suspension of otherwise available programming— and a lack of mental-health treatment present compelling circumstances for his release.

Section 3142(i) permits temporary release "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).  "Courts have used this provision

'sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries.'"  *United States v. Dodd*, No. 20-cr-0016 (NEB/HB), 2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020) (quoting *United States v. Hamilton*, No. 19-cr-54-01 (NGG), 2020 WL 1323036, at *2 (E. D. N.Y. Mar. 20, 2020)).  "A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i)."  *Clark*, 448 F. Supp. 3d at 1155; *accord United States v. Lunnie*, 451 F. Supp. 3d 995, 997 (E. D. Ark. 2020).

Courts in this District and elsewhere have looked to the four nonexclusive factors set forth in *Clark* when "mak[ing] an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i)."  448 F. Supp. 3d at 1156-57; *see, e.g.*, *Hall*, 2020 WL 2992400, at *3 (citing cases); *see also, e.g.*, *United States v. Boatwright*, No. 2:19-cr-00301-GMN-DJA, 2020 WL 1639855, at *4-8 (D. Nev. Apr. 2, 2020); *Lunnie*, 451 F. Supp. 3d at 997-98; *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2-4 (S.D. Ohio Mar. 30, 2020).  These four factors are:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Clark*, 448 F. Supp. 3d at 1157.  The factors are not necessarily given equal weight; instead, they are "consider[ed] . . . as a whole" in determining "whether a 'compelling reason' exists such that temporary release is 'necessary.'"  *Id.* (quoting 18 U.S.C. § 3142(i)).

9

With respect to the first factor, the grounds for detention remain strong. Defendant asserts that the magistrate judge "previously determined that [he] was not a risk of flight due to his family ties." Reply at 3. That is not quite accurate. The magistrate judge found that Defendant had "*rebutted the presumption* with respect to his nonappearance," but nevertheless concluded that the Government "established by a preponderance of the evidence that [Defendant] remain[ed] a risk of flight due to the seriousness of the charges, the nature of the consequences that [he] faces if convicted, including a five[-]mandatory minimum term of imprisonment for the arson charge, and his previous failures to appear in local criminal matters in Illinois." Order of Det. at 4 (emphasis added). *See United States v. Abad*, 350 F.3d 793, 797-800 (8th Cir. 2003).

Nothing Defendant has presented here "effectively override[s] or at least sufficiently counterbalance[s]" the serious concerns the Court has over Defendant's reappearance in the future when taking into account the mandatory-minimum associated with the arson charge, his lack of ties to Minnesota, and his history of failing to appear for criminal proceedings and not complying with court-ordered conditions of supervision. *Clark*, 448 F. Supp. 3d at 1157. Nor has anything presented by Defendant addressed this Court's very real concerns for the safety of the community given Defendant's violent criminal history and the weapons and explosive devices seized from his residence around the time of his arrest.

The second factor, the specificity of Defendant's COVID-19 concerns, likewise does not weigh in favor of release. This Court does not doubt the genuineness of Defendant's concerns for his health. Many people share similar concerns for their own

health and the health of loved ones, particularly given the recent spike in COVID-19 cases both locally and nationally. *See generally* CDC COVID Data Tracker, Ctrs. for Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last accessed Dec. 9, 2020). At the same time, Defendant has not identified any specific underlying health concerns that would put him at an increased risk for a more severe outcome should he contract COVID-19. *Compare, e.g.*, *United States v. Crandell*, No. 19-cr-255 (JNE/TNL), 2020 WL 1873047, at *2 (D. Minn. Apr. 15, 2020); *Graham*, 452 F. Supp. 3d at 879, *with e.g.*, *United States v. Bracey*, No. 15-cr-235(2) (JNE/TNL), 2020 WL 1809187, at *4 (D. Minn. Apr. 9, 2020) (kidney disease and dialysis treatment); *Clark*, 448 F. Supp. 3d at 1158 (diabetes).

Similarly, on this record, the Court is not able to conclude that medical care is not available to Defendant at the Jail. When Defendant asked about mental-health medication, Jail staff recommended that he speak with a medical provider to address his concerns. This does not, as Defendant contends, suggest a lack of mental-health treatment or the Jail's inability to provide medical care. Rather, the more reasonable inference is that Defendant needed to direct his concerns to appropriate personnel.

Turning to the third factor, "the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them." *Clark*, 448 F. Supp. 3d at 1160. Defendant has provided little information that would allow the Court to evaluate whether his release would reduce his risk of contracting COVID-19.

While Defendant's plan for home detention in Illinois "could potentially mitigate the risk of infection, . . . the opposite might also be true." *White*, slip op. at 9. Defendant

11

has not explained "who else has or will live in or frequent the home or identif[ied] any

screening practices or concrete COVID-19 precautions being taken there." *Clark*, 448 F.

Supp. 3d at 1160; *accord Lunnie*, 451 F. Supp. 3d at 1000.  Information before the Court

indicates that there may be at least three other adults residing at his mother's home in

Illinois.  *See, e.g.*, ECF Nos. 8 at 1 (Defendant's mother and his finance), 11 at 1-2

(childhood friend).  Defendant does not explain whether any of "these individuals are

themselves at higher risk." *Lunnie*, 451 F. Supp. 3d at 1000.  Defendant has also not

attempted to identify the type of medical care that will be available to him in Illinois should

he become ill, and again there is nothing in the record to suggest the Jail is unable to provide

adequate medical care to him.  While the Court appreciates that Defendant's mother's

home does not have the same population density as the Jail, it is largely speculative that

"home detention would be less risky than living in close quarters with others at [Jail], which

at least has screening practices and other reasonable COVID-19 precautions in place."

*Lunnie*, 451 F. Supp. 3d at 1000; *see also Clark*, 448 F. Supp. 3d at 1160-61 ("It is

speculative to predict whether Mr. Clark is safer in terms of his overall COVID-19 risks

whether he is in custody or temporarily released to live with his mother in Chicago.").  On

balance, this factor is neutral.

As for the fourth factor, "it is also appropriate to consider the likelihood that the

defendant's proposed release would increase COVID-19 risks to others, particularly if the

defendant is likely to violate conditions of release." *Clark*, 448 F. Supp. 3d at 1161.

> A defendant who is unable to comply with conditions of
> release poses potential risks to law enforcement officers who
> are already tasked with enforcing shelter-in-place orders in

12

many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.

*Id.*

Defendant's criminal history, repeated failures to appear, and past non-compliance with terms of supervision do not persuade this Court that he is likely to abide by conditions of release if the Court were to release him temporarily. *Id.* ("The court has no reason to believe that [the defendant] would suddenly become compliant now."); *accord Lunnie*, 451 F. Supp. 3d at 1002. Any future non-compliance could ultimately place others at a heightened risk of contracting COVID-19. *See Clark*, 448 F. Supp. 3d at 1161; *accord Lunnie*, 451 F. Supp. 3d at 1002. Additionally, the weapons and explosives seized from Defendant's residence heighten the Court's concerns about Defendant's dangerousness. Therefore, the fourth factor likewise favors continued detention.

At bottom, an individual's significant health conditions, particular comorbidities, and other unique circumstances may present the rare case of release under § 3142(i). This, however, is not that case. The Court appreciates that, for a number of reasons, confinement may not be the preferred, optimal environment. But, these less-than-ideal circumstances do not provide a compelling reason for Defendant's release when viewed in conjunction with the risk of non-appearance and serious safety concerns forming the basis of his detention in the first place and the potential increased COVID-19 risk to others should he be released.

## C. Due Process Argument

Lastly, Defendant is correct that "under the Due Process Clause, a [pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *accord Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906-07 (8th Cir. 2020). Notably, "pretrial detention for purposes of securing a defendant's appearance or protecting the public is not punitive under the Due Process Clause." *United States v. Villegas*, No. 2:19-cr-568-AB, 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020) (citing *United States v. Salerno*, 481 U.S. 739, 748 (1987)).

In *Bell*, the Supreme "Court articulated two ways to determine whether conditions [of confinement for pretrial detention] rise to the level of punishment." *Stearns*, 957 F.3d at 907. "A [pretrial detainee] could show that the conditions were intentionally punitive." *Id.* (citing *Bell*, 441 at 538). "Alternatively, if there is no expressly demonstrated intent to punish, the [pretrial detainee] could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* (citing *Bell*, 441 U.S. at 538-39). "If conditions are found to be arbitrary or excessive, it is permissible to 'infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.'" *Id.* (quoting *Bell*, 441 U.S. at 539). Accordingly, even if the conditions of Defendant's pretrial detention at the Jail "seem[] punitive in the lay sense, [those conditions] cannot violate due process unless there is also an express intent to punish" or "no rational relationship to legitimate government interests." *Villegas*, 2020 WL 1649520, at *2; *see United States v. Berrios*, No. 6:19-cr-00257-AA, 2020 WL 4451165, at *3 (D. Or. Aug. 3, 2020) ("To establish

14

'punishment' that violates due process[,] Mr. Berrios must show either that the lockdown conditions are 'intended to punish,' or 'excessive in relation to its non-punitive purpose,' or 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" (quoting *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004)).

As the Government points out, Defendant has not alleged that the conditions of confinement at the Jail are intentionally punitive. Defendant admits that these conditions are "in response to the COVID-19 [p]andemic," Mot. for Release at 1, and attributable "to [the Jail's] efforts to mitigate dangerous conditions," Reply at 1. Nor has Defendant alleged that these conditions are not reasonably related to the legitimate governmental purpose of reducing the risk of COVID-19 at the Jail or that they are excessive in relation to that purpose. *See Stearns*, 957 F.3d. at 907; *see also Berrios*, 2020 WL 4451165, at *3; *Villegas*, 2020 WL 1649520, at *2. In sum, Defendant's "detention is reasonably related to the legitimate government interest of protecting the public and guaranteeing his appearance at trial, and he has not shown that COVID-19 alters that determination." *Graham*, 452 F. Supp. 3d at 879 (citing *United States v. McDonald*, 451 F. Supp. 3d 1174, 1179-80 (D. Nev. 2020)); *see also Abad*, 350 F.3d at 797 ("Assuring a criminal defendant's appearance at trial is a legitimate government objective.")

## III. ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Release from Custody, ECF No. 62, is **DENIED**.

2. **Within 14 days from the date of this Order**, the parties shall submit a proposed joint redacted version of the Order to the Court. *See supra* nn. 1, 4.  Should the Court not receive a proposed joint redacted version of the Order at that time, the Court will unseal the Order in its entirety.


Date: December    9   , 2020                         *s/ Tony N. Leung*

                                                        Tony N. Leung
United States Magistrate Judge
District of Minnesota


*United States v. Rupert*
Case No. 20-cr-104 (NEB/TNL)

16