## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-104 (NEB/TNL) |
| Plaintiff, | |
| | ORDER ACCEPTING REPORT AND |
| v. | RECOMMENDATION |
| MATTHEW LEE RUPERT, | |
| Defendant. | |

---

The United States charged Matthew Lee Rupert with one count of civil disorder in violation of 18 U.S.C. Section 231(a)(3), one count of riot in violation of 18 U.S.C. Section 2101(a), and one count of aiding and abetting arson in violation of 18 U.S.C. Sections 2 and 844(i). Rupert moves to suppress: (1) evidence obtained from the execution of search warrants at his residence and from Facebook; (2) evidence obtained from the search of his car following his arrest in Chicago; and (3) statements he made to law enforcement following his arrest. (ECF Nos. 30–32.) Rupert also moves to dismiss the civil disorder and arson charges in the Indictment for failure to state an offense, and to dismiss all three charges because the statutes under which he is charged are vague and overbroad. (ECF Nos. 33–34; *see* ECF No. 12 ("Indictment").) In a January 6, 2021, Report and Recommendation, United States Magistrate Judge Tony N. Leung recommends that the Court: (1) deny Rupert's Motion to Suppress Evidence Seized Pursuant to Search

Warrants; (2) deny his Motion to Suppress Evidence from Search and Seizure of Defendant and Vehicle in Chicago; (3) deny his Motion to Suppress Statement; (4) deny his Motion to Dismiss Indictment for Failure to State Offense; and (5) deny without prejudice in part, deny in part, and grant in part his Motion to Dismiss Charges Based on Void for Vagueness and Overbreadth. (ECF No. 70 ("R&R") at 48–49.) Rupert objects to the R&R, although his objection primarily restates arguments made before Judge Leung. (ECF No. 77 ("Obj.").) The Court reviews those portions of the R&R to which Rupert has objected *de novo*. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. L.R. 72.2. Following that review, the Court accepts the R&R.

## ANALYSIS

The R&R sets forth the undisputed facts in the case,[1] and the Court incorporates those facts by reference. (R&R at 2–12.) Rupert argues that the Court should: (1) suppress evidence found while searching his residence and from a warrant issued to Facebook; (2) suppress evidence found in his vehicle during his arrest; (3) suppress his statement made following his arrest; (4) dismiss the civil disorder and arson charges for failure to state an offense; and (5) dismiss the Indictment because the statutes are facially overbroad and vague. (*See* Obj. at 1.)

---

[1] Rupert does not dispute Judge Leung's factual findings, only his legal conclusions.

## I.     Warrant Searches

Rupert challenges three separate warrants: a warrant issued to the social-networking site Facebook for information about his activity on that site (the "Facebook Warrant") and two warrants to search Rupert's residence. (the "Riot and Drug Warrants").[2] (ECF No. 30.)

### A.     The Facebook Warrant

FBI Special Agent F.M. Stephens requested the Facebook Warrant from a magistrate judge in the District of Minnesota. (R&R at 10.) Rupert objects to the Facebook Warrant's validity, arguing that the magistrate judge who issued it failed to create a proper record of the proceeding as the Federal Rule of Criminal Procedure 4.1(b) requires. (ECF No. 30.)

The Federal Rules of Criminal Procedure permit a magistrate judge to "issue a warrant based on information communicated by telephone or other reliable electronic means." Fed. R. Crim. P. 41(d)(3); *Id.* 4.1(a). SA Stephens obtained the Facebook warrant through electronic means, presenting the warrant materials to the magistrate judge through simultaneous visual and audio connection. (R&R at 10–12.) When a magistrate judge uses a telephone or other electronic means in issuing a warrant, Rule 4.1 mandates that any testimony for the application is given under oath. Fed. R. Crim. P. 4.1(b)(1). If

---

[2] With respect to this objection, Rupert "relies on his previously submitted motion and memoranda." (Obj. at 1–2.)

the issuance of the warrant relies solely on the applicant's sworn affidavit, the magistrate judge must acknowledge that reliance. *Id.* 4.1(b)(2)(A). If, however, the magistrate judge takes testimony or looks at other evidence, the magistrate judge must: make a verbatim record of the proceeding; have that record certified as accurate and file it; sign, certify, and file any other written record; and file any exhibits. *Id.* 4.1(b)(2)(B); *United States v. Skarda*, 845 F.3d 370, 375 (8th Cir. 2016).

The only basis for the Facebook Warrant was SA Stephens's affidavit—the magistrate judge took no additional testimony and considered no additional exhibits. (ECF No. 54 ("Hr'g Tr.") at 35:20–36:9.) Per Rule 4.1(b)(2)(A)'s dictates, the magistrate judge stated in writing that SA Stephens had attested to the contents of the affidavit through reliable electronic means. (Hr'g Ex. A[3] (ECF No. 39-1) at 14.) As SA Stephens only attested to the veracity of his affidavit and the written materials provided to the magistrate judge, did not offer any testimony or other evidence, and the magistrate judge acknowledged that SA Stephens did so, there was no failure to create a record under Rule 4.1(b).[4]

---

[3] Exhibit citations refer to exhibits received at the suppression hearing. (ECF No. 54.)

[4] The Court notes that even if a warrant violates Rule 4.1(b), the appropriate remedy for such a violation may not necessarily be suppression of the evidence obtained through executing such a warrant. *Cf. Skarda*, 845 F.3d at 375 ("A violation of Rule 41 warrants exclusion only when (1) the violation is of constitutional magnitude; (2) the defendant is prejudiced in that the search would not have taken place or would not have been as intrusive; or (3) there is evidence of an intentional and deliberate or reckless disregard for the rule."). Rupert has made no arguments addressing this issue.

### B.     The Riot and Drug Warrants

The Riot and Drug Warrants were both issued by a magistrate judge in the Central District of Illinois. The applicant was FBI Special Agent David B. Brown. (R&R at 14–15; Hr'g Ex. C (ECF No. 39-3) at 1; Hr'g Ex. D (ECF No. 39-4) at 1.) Rupert raises two objections to the Riot and Drug Warrants: (1) on information and belief, the magistrate judge failed to create a proper record; and (2) the executing agents seized material beyond the scope of the Riot and Drug Warrants.[5] (ECF No. 30 at 1–2.)

#### 1.     Failure to Create a Record

Rupert argues that the magistrate judge in Illinois, in issuing the Riot and Drug Warrants, failed to comply with Rule 4.1(b) and create a record. SA Brown applied for both warrants via telephone. (Hr'g Ex. C at 1; Hr'g Ex. D at 1.) He was under oath in seeking both warrants; both applications stated that they were based on the attached affidavits. (Hr'g Ex. C at 1, 10; Hr'g Ex. D at 1, 6.)

Rupert asserts that SA Stephens did not—and could not—know if SA Brown and the magistrate judge had any discussion related to the application. (ECF No. 59 at 12.) The record, however, contains no evidence from which the Court can reasonably infer that the magistrate judge considered additional evidence in issuing either of the Riot and Drug Warrants. Rupert, as the party seeking to suppress, carries the burden of proof on

---

[5] Although a magistrate judge in the Central District of Illinois issued both the Riot and Drug Warrants, Rule 41 permits a defendant to move to suppress evidence where the trial will occur. Fed. R. Crim. P. 41(h).

this issue. *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984). With no evidence that the magistrate judge based the issuance of the Riot and Drug Warrants on testimony or evidence beyond SA Brown's attestation to the affidavit, there was no violation of Rule 4.1(b).[6]

2.      *Seizure of Items Beyond the Scope*

Although Rupert's initial motion to suppress listed several items as outside the scope of the Riot and Drug Warrants, his post-hearing brief only discusses several posters that law enforcement seized. (*Compare* ECF No. 30 at 2, *with* ECF No. 59 at 12–13.) Rupert maintains that SA Stephens was unable to testify about how the posters were connected to the alleged offenses or how the Riot and Drug Warrants covered them and the Court must therefore suppress the posters. (ECF No. 59 at 12–13.)

The content of the posters is unclear from the record before the Court. Rupert, in his motion to suppress, describes them as containing protected First Amendment material and the government argues that they contained "derogatory statements about law enforcement officers." (ECF No. 30 at 2; ECF No. 60 at 6.) But nothing in the record indicates what the posters said or depicted, or how they exceeded the scope of the warrant. It is not a straightforward task to analyze the constitutionality of a seizure when the Court is unable to determine what, exactly, was seized. Without some articulation

---

[6] Again, the Court notes that the remedy for a failure to comply with Rule 4.1(b) may not necessarily be suppression and Rupert has not addressed this issue. *Skarda*, 845 F.3d at 375.

assisting the Court in this task, the Court cannot conclude that suppression is merited.[7] *Carter*, 729 F.2d at 940; *see United States v. Crawford*, 220 F. Supp. 3d 931, 936–37 (W.D. Ark. 2016) (noting that the issue of the burden of proof on whether the government has exceeded the scope of a search warrant is unclear in the Eighth Circuit, but that a defendant generally must make some initial, *prima facie* showing as to illegality).

## II.        Search of Rupert's Vehicle

Rupert's argument that the Court should suppress evidence found in his vehicle has several prongs: first, Rupert takes issue with the evidentiary standard Judge Leung applies, arguing that eyewitness testimony of his arrest was required; second, Rupert contends that the curfew order under which he was arrested was defective; third, he asserts that the Fourth Amendment prohibited a warrantless search of his vehicle. (Obj. at 2–11.)

### A.        *Evidentiary Standards*

Rupert argues that the Court must suppress the evidence because Judge Leung "erred by automatically crediting the general summary of events set forth in the Chicago police officer's report without testimony from any witness with personal knowledge of any of the events." (Obj. at 3.) A suppression hearing is not a trial, however, and the

---

[7] Admissibility at trial, of course, is another matter, as the Federal Rules of Evidence do not apply at suppression hearings. *United States v. Golden*, 418 F. Supp. 3d 416, 422 (D. Minn. 2019) (citing *United States v. Boyce*, 797 F.2d 691, 693 (8th Cir. 1986)). The Court need not (and does not) resolve the issue at this juncture.

evidentiary standards that apply at such a hearing are lower than those that apply at trial. *United States v. Raddatz*, 447 U.S. 667, 679 (1980). Although the rules of evidence do not apply at suppression hearings, this does not mean that it is open season on taking evidence—the evidence that forms the basis of the Court's ruling "must still be sufficiently reliable and probative." *United States v. Golden*, 418 F. Supp. 3d 416, 422 (D. Minn. 2019) (citing *United States v. Boyce*, 797 F.2d 691, 693 (8th Cir. 1986)).

At the suppression hearing, SA Stephens testified that he received Rupert's arrest report though FBI colleagues in Illinois and their connections with the Chicago Police Department. (Hr'g Tr. at 57:6–11.) For purposes of the motions before the Court only, that testimony was credible, and the report sufficiently reliable and probative of the circumstances of the request. (*Id.* at 56:4–59:13.) Proper resolution of Rupert's motion did not require eyewitness testimony.

### B.   *Lawfulness of the Curfew Order*

Next, Rupert objects to Judge Leung's conclusion that his arrest was valid based solely on the fact of a curfew order, "irrespective of whether the curfew order itself was legally valid or was even applicable to Mr. Rupert." (Obj. at 4.) Rupert argues that the R&R cites no authority approving of an arrest where the conduct observed by the officer did not constitute a crime or where the alleged underlying offense was legally invalid or unconstitutional. (*Id.* at 5.)

The Chicago Police Department did not have a warrant for Rupert's arrest. So, the Court must consider the appropriate standard for a warrantless arrest. Warrantless arrests are permissible where "there is probable cause to believe that someone has committed or is committing a crime." *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). The probable cause determination is a "practical and common-sensical" one; it is based "on the totality of the circumstances and requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (quotation omitted). In making the probable cause determination, the court looks at the events "leading up to the arrest," then looks to whether those facts, "viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quotation omitted). This bar is not high and "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).

The Court assesses probable cause "from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case." *United States v. Davis*, 867 F.3d 1021, 1027 (8th Cir. 2017) (quotation omitted). Given the circumstances under which Rupert's arrest occurred, considering the issuance of a curfew (valid or not), the civil unrest that gave rise to the curfew, and the fact that Rupert's car and the people inside it

matched the description of wanted suspects, a reasonably prudent Chicago police officer would have probable cause to believe that Rupert had committed or was committing a crime.

Although Rupert faults the R&R for not determining the legality of the curfew order and argues that the curfew order had no legal basis, (Obj. at 6–10), Judge Leung correctly determined that the legality of the curfew order is irrelevant to the probable cause analysis. (R&R at 21.) The Court considers whether probable cause existed based on "the available facts and circumstances." *United States v. Perry*, 908 F.3d 1126, 1129 (8th Cir. 2018). The circumstances available to the Chicago police officers who arrested Rupert were: seeing Rupert and his associates, whose descriptions matched those of a bulletin that several people were in possession of incendiary or explosive devices in the area; that Rupert and his associates were out on the streets of Chicago after curfew, and that several of those associates fled as the police approached. A "person of reasonable caution" would "believe that an offense was being or had been committed" by Rupert. *Id.* (quotation omitted). Thus, probable cause existed and Rupert's motion to suppress on that basis is denied.

C.    *Vehicle Search*

The R&R concluded that there were two separate constitutional bases for searching Rupert's vehicle: conducting an inventory search and searching the car on probable cause to believe it contained contraband or evidence of a crime. (R&R at 22–25.)

Although Rupert specifically addresses only the contraband issue, the Court considers

both. (Obj. at 11.)

1.    *Inventory Search*

After lawfully taking custody of an automobile, police "may conduct a warrantless

inventory search of the property to secure and protect vehicles and their contents within

police custody." *United States v. Rehkop*, 96 F.3d 301, 305 (8th Cir. 1996) (citations omitted).

Police may also "take protective custody of a vehicle when they have arrested its

occupants, even if it is lawfully parked and poses no public safety hazard." *United States*

*v. Morris*, 915 F.3d 552, 556 (8th Cir. 2019) (quotation omitted). Chicago police saw Rupert

next to a maroon sedan with its doors open when they arrested him; he admitted that the

car was his, and a registry check confirmed this. (R&R at 23.) Chicago police impounded

the car for "MCC violations"[8] and an inventory search of the car turned up "a red

bookbag with incendiary explosives/fireworks." (*Id.*) The search of Rupert's car was

lawful under the inventory search exception.

2.    *Contraband and Evidence of a Crime*

Rupert asserts that Judge Leung erred in concluding that Chicago police had

probable cause to search Rupert's vehicle because the R&R does not point to a "specific

and objective factual basis for a reasonably prudent officer to conclude it is more likely

---

[8] What "MCC" stands for is unclear from the record, although it may refer to the
Municipal Code of Chicago.

than not that the vehicle contained evidence of a crime." (Obj. at 11.) The "automobile exception" to the Fourth Amendment permits police to execute warrantless searches of vehicles if there "is probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Winarske*, 715 F.3d at 1068 (citations omitted). The scope of such a search may extend to the trunk and containers in the vehicle. *See, e.g.*, *Arizona v. Gant*, 556 U.S. 332, 347 (2009) (holding that if a police officer has probable cause to believe a vehicle contains evidence of a crime, that officer may search "any area of the vehicle in which the evidence might be found"). An officer has probable cause to search under this exception "if the facts and circumstances known to the officers when they began the search were sufficient in themselves for a person of reasonable caution to believe that contraband or evidence of criminal activity was present in the vehicle." *United States v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016). And again, the probable cause hurdle is not a high one to clear. *Wesby*, 138 S. Ct. at 586.

Before searching Rupert's car, Chicago police had a report of three individuals possessing an incendiary device in the area where they saw the car. (R&R at 24.) Chicago police spotted several individuals matching the report's description in that area standing outside a maroon sedan with its doors open. (*Id.*) As the police approached, two of the individuals ran; the police took three others into custody. (*Id.*) Under these circumstances, Chicago police had probable cause to believe that the car contained contraband or other evidence of a crime. A person of reasonable caution, when seeing people near a car with

12

its doors open, would assume that the car is in their possession and that if those people are suspected of a crime, the car may contain evidence of that crime. Chicago police did not require a warrant to search Rupert's car and the Court denies Rupert's motion to suppress evidence obtained from that search.

### III.    Custodial Statements

Rupert contends that F.B.I. agents violated his Fifth Amendment rights when they did not respect his request to speak to a lawyer before interviewing him. (Obj. at 12–13.) Judge Leung concluded that Rupert's invocation of the right to counsel was ambiguous and that Rupert then also knowingly, voluntarily, and intelligently waived his rights. (R&R at 28, 32.) Rupert only makes specific objections to Judge Leung's conclusion that Rupert ambiguously invoked his right to counsel; he does not address the issue of waiver. (Obj. at 12–13.) The Court addresses both for the sake of completeness.

#### A.    *Invocation of Right to Counsel*

If a suspect invokes his right to counsel, the police must stop questioning him until counsel is present, unless he "initiates further communication." *Edwards v. Arizona*, 451 U.S. 477, 482, 484–85 (1981). To invoke the right to counsel, "the suspect must unambiguously request counsel." *United States v. Davis*, 512 U.S. 452, 459 (1994). The invocation must be clear enough "that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* Ambiguous or equivocal invocations will not do—if the reference to an attorney is such "that a

reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," police may continue questioning. *Id.* (emphasis original). This inquiry is objective, not subjective. *Id.* at 458–59. When a suspect makes an ambiguous or equivocal reference to wanting an attorney, "it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Id.* at 461.

Rupert focuses on his initial statement when the police entered the room—that he wanted to speak to a lawyer—and argues that this is a sufficient invocation of his right to counsel. (Obj. at 11–13.) The chronology of events during the interview is as follows: Rupert stated that he wanted a lawyer; one of the agents said "I'm sorry?"; Rupert reiterated that he did not want to speak to them; the agent said "Okay," and identified both himself and the second agent as FBI agents; the agent said that the two wanted to talk to Rupert but understood that he wanted to speak to a lawyer; Rupert then waved the agents in with his hand, told them it was fine, and that he would speak with them. (Hr'g Ex. G at 1:55–2:11.) These circumstances do not amount to an "unambiguous" request for counsel—rather, a reasonable officer under the circumstances would have seen Rupert's statements and actions as ambiguous as to whether he wanted to speak to an attorney. *Davis*, 512 U.S. at 458–59.

### B.       Knowing, Voluntary, and Intelligent Waiver

Whether a *Miranda* waiver is valid is a two-pronged inquiry. *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011). First, it must be voluntary, "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (quotation omitted). Second, the suspect must make the waiver being fully aware of the "nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quotation omitted). In considering validity, the Court looks to the totality of the circumstances. *Id.*

Rupert's waiver was voluntary. Although Rupert argues that the conversation was involuntary because it had to end when Rupert invoked the right to counsel, as discussed above, Rupert did not unambiguously invoke that right, and he does not argue that the agents acted coercively. Nor did they. The FBI agents in the interview did not intimidate, coerce, or threaten Rupert, either explicitly or implicitly, before or during questioning. (*See generally* Hr'g Ex. G (videorecorded interview with Rupert).) The agents simply stated their desire to ask Rupert questions, a request to which he acceded. The record contains no evidence that Rupert's "decision to speak with them was the product of anything other than a free and unconstrained choice." *Vinton*, 631 F.3d at 482.

The fact that a statement is made voluntarily is not enough—the defendant must make the statement knowing the rights he or she is giving up by making it. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). To meet this standard, the defendant must be fully

aware of "both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Gallardo*, 495 F.3d 982, 990 (8th Cir. 2007) (quotation omitted). Here, Rupert's waiver was knowing and intelligent. The record demonstrates, based on the Court's *de novo* review, that Rupert was fully aware of the nature of his rights and what he was giving up. The agents repeatedly asked if Rupert understood his rights before interviewing him. The agents read him his rights. Rupert demonstrated his own understanding of his rights. And Rupert responded to the agents' questions, demonstrating comprehension.

Rupert's motion to suppress his statements fails.

## IV.    Failure to State an Offense

Rupert's motion to dismiss the Indictment for failure to state an offense challenges the charges of civil disorder and arson. (ECF No. 33.) To comply with the Federal Rules of Criminal Procedure, an Indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and include the "provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). If an indictment "contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution," it is valid. *United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019). Generally, an indictment need only "track[] the statutory language." *United States*

*v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). Unless "no reasonable construction [of an indictment] can be said to charge the offense," it is sufficient. *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995) (quotation omitted).

A.      *Civil Disorder*

Count I of the Indictment charges Rupert with committing civil disorder in violation of 18 U.S.C. Section 231(a)(3). (Indictment at 4.) A civil disorder is a "public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). Section 231(a)(3) makes it illegal to commit an act to "obstruct, impede, or interfere" with a law enforcement officer who is "lawfully engaged in the lawful performance of his official duties" in connection with the civil disorder, where that act "in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." 18 U.S.C. § 231(a)(3).

Rupert maintains that the Indictment "fails to set forth any factual allegations to indicate how [he] interfered with any law enforcement officers performing official duties" or obstructed commerce or the performance of federally protected functions. (ECF No. 33 at 2; ECF No. 59 at 1 n.1 (resting on arguments in motion).)

The Indictment alleges that many members of law enforcement and the National Guard were deployed in response to civil disorder, including arson and looting,

following the death of George Floyd. (Indictment ¶¶ 1–2.) It further alleges that that civil

disorder damaged businesses engaged in interstate commerce, adversely affecting it and

federally protected functions. (*Id.* ¶ 2.) The Indictment also alleges that Rupert acted to

obstruct, impede, or interfere with law enforcement responding to the disorder by

"passing out explosive devices" and "encouraging others to throw" those devices,

obstructing, delaying, and adversely affecting interstate commerce and federally

protected functions. (*Id.* ¶¶ 4–5, 7.) The Indictment cites specific examples of such

conduct, including identifying police vehicles and encouraging others to throw bombs at

police. (*Id.* ¶ 5.)

The Indictment sufficiently alleges the elements of the offense, that: (1) at the time

of Rupert's alleged conduct, civil disorder existed; (2) those civil disorders in some way

interfered with, obstructed, delayed, or adversely affected interstate commerce; (3) law

enforcement was lawfully responding to that civil disorder; (4) Rupert knowingly acted

to obstruct, impede, or interfere with those efforts by handing out explosive devices and

encouraging others to throw those devices. *See United States v. Casper*, 541 F.2d 1275, 1276

(8th Cir. 1976) (listing elements).

### B.    *Arson*

Count 3 of the Indictment charges Rupert with arson in violation of 18 U.S.C.

Sections 2 and 844(i) for causing "malicious damage by means of fire" to a Sprint store in

Minneapolis, "a building used in interstate commerce." (Indictment ¶ 11.) Section 844(i)

makes it illegal to maliciously damage "by means of fire or an explosive, any . . . real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). Rupert's argument is that the Indictment does not allege that he actually caused any damage. (ECF No. 33 at 2; ECF No. 59 at 1 n.1.)

Contrary to Rupert's contention, courts cannot insist "that a particular word or phrase appear in the indictment when the element is alleged 'in a form' which substantially states the element." *United States v. Villareal*, 707 F.3d 942, 957 (8th Cir. 2013) (quotation omitted). As long as an indictment, "by fair implication . . . alleges an offense recognized by law," it "need not use the specific words of the statute." *Id.* (citation omitted). The Indictment alleges that Rupert recorded himself asking for lighter fluid, entering the Sprint store, and later exiting, saying that he lit the store on fire. (Indictment ¶ 5.) The Indictment specifically asserts that Rupert lit the store on fire; it is certainly a "fair implication" that lighting a building on fire will cause damage to it. *Villareal*, 707 F.3d at 957. The Indictment states an offense of arson and the Court denies Rupert's motion to dismiss it on that ground.

## V.     Constitutional Challenges to Statutes

Finally, Rupert argues that the charges in the Indictment rely on constitutionally defective statutes. (ECF No. 34 at 1.) Rupert has raised both facial and as-applied challenges to the statutes: 18 U.S.C. Section 231(a)(3) (civil disorder); 18 U.S.C. Section

844(i)[9] (arson); and 18 U.S.C. Sections 2101 *et seq.*, the Anti-Riot Act ("ARA"). No party

objects to Judge Leung's conclusion that the as-applied challenges are premature because

they will require resolving factual issues about Rupert's alleged conduct, so the Court

accepts his recommendation to deny Rupert's motion without prejudice as to the as-

applied claims. (R&R at 38–39.) The Court concludes that further factual development is

also required to consider Rupert's facial challenge that the statutes are void for

vagueness, and therefore denies his motion without prejudice to the extent it challenges

the statutes on this basis.[10] This leaves Rupert's facial challenge that the statutes are

overbroad.

Under the overbreadth doctrine, a defendant may challenge a statute as

unconstitutionally overbroad; statutes are overbroad and facially invalid if they prohibit

"a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292

(2008). The doctrine only exists in the First Amendment context. *Schall v. Martin*, 467

U.S. 253, 268 n.18 (1984). As such, this type of challenge rarely succeeds against laws or

regulations that are "not specifically addressed to speech or to conduct necessarily

---

[9] Although the arson charge also includes 18 U.S.C. Section 2 (aiding and abetting liability), Rupert has not objected to Section 2.

[10] *See United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (per curiam) (requiring defendant "show that the statute is vague as applied to his particular conduct"); *United States v. Cook*, 782 F.3d 983, 987 (8th Cir.) (holding that to challenge a statute as unconstitutionally vague, the Court must look to the specific facts of the case because a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"), *cert. denied*, 577 U.S. 906 (2015).

associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003). The Court's first step is to "construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293.

### A.      Counts 1 and 3: Civil Disorder and Arson

The civil disorder and riot statutes do not expressly regulate First Amendment expression. The civil disorder statute, Section 231(a)(3), applies "only to violent physical acts," not to speech. *United States v. Mechanic*, 454 F.2d 849, 852 (8th Cir. 1971). It covers only "acts to impede, obstruct, or interfere" with law enforcement—it "does not purport to reach speech of any kind." *Id.* at 853. Rupert argues that Section 231(a)(3) does not explicitly require that the acts be physical, but the Court must apply Eighth Circuit precedent in *Mechanic*.[11] (ECF No. 34 at 4); *United States v. Hood*, 342 F.3d 861, 864 (8th Cir. 2003). Because Section 231(a)(3) does not apply to First Amendment activity, Rupert's facial overbreadth challenge to the civil disorder statute fails.

Likewise, the arson statute, Section 844(i), does not explicitly regulate First Amendment activity; rather, it covers malicious damage, by means of fire, to buildings

---

[11] Rupert argues that *Mechanic* is no longer good law in light of recent Supreme Court precedent. (ECF No. 59 at 14.) But Rupert's argument as to *Mechanic* rests on its pronouncement as to who may raise a facial challenge. (*Id.*) Rupert does not argue that the Supreme Court has called *Mechanic*'s determination of what the civil disorder statute covers into question.

and personal property.[12] 18 U.S.C. § 844(i). And even property owners do not have unlimited freedom to destroy their own property. *See Russell v. United States*, 471 U.S. 858 (1985) (upholding a conviction under Section 844(i) for a landowner who set his own apartment building on fire); *Evey v. United States*, No. 2:16-CV-08900-SVW, 2018 WL 6133407, at *6 (C.D. Cal. May 10, 2018) ("Section 844(i) does not have, as an element, that the involved property must belong to 'another.'"). Rupert's facial challenge to Section 844(i) also fails.

### B.    *Count 2: Riot*

The parties do not challenge the R&R's recommendation to dismiss Count 2 to the extent it charges Rupert with "encouraging" or "promoting" a riot based on *United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020).[13] (R&R at 49; ECF No. 78 at 1 n.1.) The Court has reviewed the recommendation for clear error and accepts it.

The remainder of Count 2 charges that Rupert acted with intent to incite, organize, participate in, carry on, commit any act in furtherance of, or aid and abet, a riot in

---

[12] Rupert argues that flag burning might constitute arson under Section 844(i), but historically, other statutes have addressed this specific conduct. *See generally, e.g., United States v. Eichman*, 496 U.S. 310 (1990) (federal Flag Protection Act); *Texas v. Johnson*, 491 U.S. 397 (1989) (Texas law banning flag burning). And a challenge to such specific conduct would more appropriately be the substance of an as-applied, rather than facial, challenge.

[13] *Miselis* held that the terms "encourage" and "promote" in the ARA were overbroad. 972 F.3d at 536. The Ninth Circuit recently agreed. *United States v. Rundo*, No. 19-50189, 2021 WL 821938 (9th Cir. Mar. 4, 2021).

CASE 0:20-cr-00104-NEB-TNL   Doc. 81   Filed 03/12/21   Page 23 of 25

violation of the ARA. 18 U.S.C. § 2101(a). To obtain a conviction under the ARA, the government must prove that the defendant has a "specific intent to engage in unprotected speech or conduct," obviating Rupert's concern that an innocent participant in a protest that turns into a riot might face federal felony charges. *Miselis*, 972 F.3d at 535; *see* 18 U.S.C. § 2101(a) ("Whoever travels in interstate or foreign commerce . . . with intent—to incite a riot; . . ."); (ECF No. 34 at 8). Indeed, the Seventh Circuit has rejected this exact argument. *Nat'l Mobilization Comm. to End the War in Viet Nam v. Foran*, 411 F.2d 934, 938 (7th Cir. 1969) (concluding that the plaintiffs' "guilt by association" argument "fail[ed] to take account of the language of the statute" because the statute covered "riot-connected overt acts, but only if the prescribed intent is present when the interstate travel or use of interstate facilities occurs").

Rupert argues that the *Miselis* court should have struck "organize" from the ARA in addition to "encourage" and "promote." (ECF No. 59 at 15.) In *Miselis*, the Fourth Circuit considered the word "organize" in the context of a riot and concluded that it does not cover "mere abstract advocacy," but does cover "concrete aid" because "by the time speech reaches the point of organizing a riot, it has crossed the line dividing abstract idea from material reality." 972 F.3d at 537. Since the issuance of the R&R, the Ninth Circuit has disagreed with the Fourth Circuit, determining that "the verb 'organize' is similarly overbroad." *United States v. Rundo*, No. 19-50189, 2021 WL 821938, at *5 (9th Cir. Mar. 4, 2021). But the Ninth Circuit's conclusion surrounding the verb "organize" did not stem

from the type of substantive analysis conducted by the Fourth Circuit in *Miselis*. *Compare id.*, *with Miselis*, 972 F.3d at 537. This Court agrees with the analysis of *Miselis* with respect to the term "organize" in the ARA. Therefore, the Court grants Rupert's motion to dismiss the Indictment on grounds of overbreadth to the extent Count 2 charges him with encouraging or promoting a riot under Section 2101(a)(2), but denies the overbreadth challenge in all other respects.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Rupert's objections are OVERRULED;

2.  The Report and Recommendation (ECF No. 70) is ACCEPTED;

3.  Rupert's Motion to Suppress Evidence from Search Warrants (ECF No. 30) is DENIED;

4.  Rupert's Motion to suppress Evidence from Arrest (ECF No. 31) is DENIED;

5.  Rupert's Motion to Suppress Statement (ECF No. 32) is DENIED;

6.  Rupert's Motion to Dismiss Indictment (ECF No. 33) is DENIED;

7.  Rupert's Motion to Dismiss based on Unconstitutional Statutes (ECF No. 34) is DENIED WITHOUT PREJUDICE IN PART to the extent it raises as-applied and facial vagueness challenges to the statutes listed in the Indictment, GRANTED IN PART to the extent to the extent that Count 2 of

the Indictment charges Rupert with encouraging or promoting a riot under

18 U.S.C. Section 2101(a)(2), and DENIED in all other respects.


Dated: March 12, 2021                          BY THE COURT:

                                               s/Nancy E. Brasel
                                               Nancy E. Brasel
                                               United States District Judge